CASE 41—INDICTMENT—FEBRUARY 7.

# Fueston v. Commonwealth.

APPEAL FROM LAUREL CIRCUIT COURT.

INSTRUCTION TO JURY LIMITING EFFECT OF TESTIMONY.—Testimony introduced by the Commonwealth being competent only by way of contradicting the testimony of one of defendant's witnesses, it was error to allow it to go to the jury without instructing them that it was allowed to be considered only for that purpose.

Upon a trial for murder, a witness for defendant stated upon his original examination that defendant had no pistol at the time of the killing, and then stated upon cross-examination that he did not see defendant shoot at deceased. He was then asked if he had stated before the grand jury that he saw the defendant shoot the deceased, and answered in the negative. After defendant had closed his testimony the Commonwealth was permitted to prove by a member of the grand jury that the witness had stated before that body that he saw defendant shoot deceased. *Held*—That it was a prejudicial error to allow the testimony of the grand juror to go to the jury without an instruction telling them that it could be considered only for the purpose of contradicting defendant's witness. · ·

JAMES ANDREW SCOTT FOR APPELLANT.

1. The statement of Johnson, the grand juror, that the witness, Jackson, swore before the grand jury that he saw defendant shoot deceased was not in contradiction of Jackson, and was, therefore, not competent evidence. (Crittenden v. Commonwealth, 82 Ky., 164; Loving v. Commonwealth, 80 Ky., 507; Kennedy's case, 14 Bush, 358.)

Fueston v. Commonwealth.

2. The many and lengthy instructions were calculated to mislead the
   jury, and the court should, on that account, reverse.   (9 Bush, 14.)
3. It was the duty of the court to give to the jury the whole law of the
   case.   (Stivers v. Commonwealth, 6 Rep., 195.)
4. The instructions as to manslaughter were erroneous.   (Stanley v. Com-
   monwealth, 9 Ky. Law Rep., 665; Oakley v. Commonwealth, 10 Ky
   Law Rep., 885; Chittenden v. Commonwealth, Idem, 330; Costigan
   v. Commonwealth, 11 Ky. Law Rep., 618.)
5. An instruction as to involuntary manslaughter should have been given
   (Conner v. Commonwealth, 13 Bush, 714; Farris v. Commonwealth,
   14 Bush, 362; Buckner v. Commonwealth, 14 Bush, 602.)

EVERSOLE & BROWN, SCOTT & VIOLETT OF COUNSEL FOR
APPELLANT.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

No brief in record,

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

In a desperate conflict between several of the Fues-
tons and Parions upon the one side, and several of the
Lawsons and Roses upon the other, John and Ewell
Lawson and James Fueston were killed, and several
others wounded.   The weapons used were pistols, and
many shots were exchanged.   The testimony, as might
well be expected, is very conflicting.   The appellant,
Beth Fueston, was jointly indicted for murder with
seven others, for the killing of John Lawson, the de-
ceased having also taken part in the difficulty.

James Fueston, who was killed, was a son of the ap-
pellant.   The latter has been convicted of manslaughter,
and now appeals from a sentence of twenty-one years
in the penitentiary.

As the case must be remanded for another trial, and
as others may yet be tried for having taken part in the
tragedy, we shall refrain from a discussion of the evi-

dence save so far as is necessary to a due consideration of the questions raised by this appeal.

The difficulty occurred at a church which appellant was in the habit of attending, and when religious services were being held. The appellant came there with his wife and daughter, and also some neighbors, who, however, do not appear to have been engaged in the trouble. It was in hot weather, and he was in his shirt-sleeves. He then, apparently, had no weapon. The testimony is conflicting as to whether he, at any time during the difficulty, had a pistol. Some witnesses say he did, and some that he did not. Assuming, however, that he did, yet there is no positive evidence that he shot the deceased, John Lawson. After a careful examination of the record, we fail to find that any witness says so. The deceased was shot twice. Several witnesses swear positively who fired one of the shots, but who fired the other does not appear by any positive evidence. The son of the appellant appears, according to the latter's testimony, to have been first killed, and in his immediate presence. There is testimony showing that at the commencement of the shooting the appellant grabbed the deceased, and in the scuffle they went over a bank; and one witness says that after they did so he saw smoke, as if from a pistol, at the point where they then were, and this statement is possibly confirmed by another witness. But what may well be termed "the battle" had then become general; the parties were then scattered about, and the firing was going on upon all sides. The deceased himself had a pistol, which he had been firing at some one. He was seen at another point after the scuffle with the appellant, and then it

was that several witnesses say he was shot at least once. As to these matters there is perhaps some conflict of evidence, but when both the State and the accused had closed their testimony in chief there was no evidence tending to show that the appellant either shot, or shot at the deceased, save the circumstances just detailed. The vital question was whether he had done so, or had aided or encouraged those who did do so, and we have said this much as properly leading up to the consideration of the competency of certain testimony.

The accused introduced one Wm. Jackson as a witness. He was an eye witness of the difficulty. His testimony was doubtless regarded as material by the accused, and so it appears to us. He testified as to various matters, and among them that he saw the accused "before and during the fight. He had no pistol." Upon cross-examination he said: "Did not see Beth Fueston have John Lawson down or shoot at him." He was then asked: "Did you state before the grand jury, in Whitley Circuit Court, that you saw Beth Fueston shoot John Lawson?" The witness answered, in effect, in the negative.

After the accused had closed his testimony, the Commonwealth was permitted, over his objection, to introduce a member of the grand jury, and prove by him that Jackson stated before it that "he saw Beth Fueston put pistol against John Lawson and shoot." It can not well be doubted but what this evidence was effective in the way of a conviction. It was un questionably very damaging to the appellant's cause. Certainly the Commonwealth had no right to prove as a substantive fact, or as matter in chief, that Jack-

son had said he saw the accused shoot Lawson. The witness had testified upon his examination in chief by the accused that the latter had no pistol. Conceding that this was equivalent to saying that the accused did not shoot the deceased, yet the testimony of the grand juryman was at most only competent by way of contradiction of Jackson's testimony; but it was allowed to go to the jury without their being told that it was only to be considered for that purpose. Upon the peculiar facts of the case, in view of there being no positive testimony that the accused had shot or shot at the deceased, this should have been done. It doubtless was received by the jury as substantive testimony that the accused shot him. It was, in effect, evidence in chief upon the part of the State. The court was bound, as it no doubt intended, to afford the appellant a fair trial, but this, we think, was not done for the reason indicated. This testimony was introduced after the defense had closed its evidence, and when it was likely to be very effective with the jury. It was proven as the statement of an eyewitness to the tragedy, made not long after its occurrence, and coming as it did without restriction from the court as to its effect, the conclusion is almost, if not quite, irresistible that the jury regarded it in determining the question whether the accused actually shot the deceased.

To have insured a fair trial, the lower court should, upon the circumstances of this case, have instructed the jury how and for what purpose they could consider this testimony. The whole law of the case was properly given to the jury, but for the error indicated the judgment is reversed, and cause remanded for another trial consistent with this opinion.