CASE 68.—PROSECUTION AGAINST J. F. BALL FOR MURDER.
—May 8.

# Ball v. Commonwealth

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals.  Affirmed.

1. Criminal Law—Review—Admission of Evidence—Harmless Error—Where, on a trial for homicide, the State, in support of its claim of the existence of a conspiracy between accused and a third person to kill decedent, showed that prior to the killing decedent had given testimony before the grand jury on which accused had been indicted, that immediately after decedent had returned from the grand jury room the third person made statements to witnesses and that on the evening before the killing the third person and accused were seen together in an alley near decedent's house the admission in evidence of the statements of the third person, which evidence was subsequently withdrawn from the jury, was not prejudicial.

2. Homicide—Motive—Evidence—Admissibility—On a trial for homicide, it was competent to show as a motive for the killing that decedent had procured an indictment against accused charging him with assault and had filed a suit against him for slander.

3. Criminal Law—Appeal—Harmless Error—Admission of Evidence—Where, on a trial for homicide, the prosecution, to show motive, proved that decedent had procured an indictment against accused charging him with assault, and had filed a suit against him for slander, accused was not prejudiced by the action of the court in permitting the prosecution to read the indictment and the petition and expressly stating to the jury that the same was admitted to show motive.

4 Same—Instructions—Where, in a homicide case, a witness

testified that he and accused were on the same side of the
street at the time of the killing, and he admitted that he
had told a third person that he was on the opposite side
of the street, the court's statement that the evidence as to
what he had stated to the third person could be considered
only as impeaching evidence was not prejudicial to accused.

5   Homicide—Instructions—Misleading Instructions—An instruc-
tion on a trial for homicide, authorizing a verdict of wilful
murder if the jury believe that the killing was done with
malice aforethought, and a verdict of voluntary manslaughter
if they believe that the killing was done in sudden heat of
passion "and without previous malice," was not erroneous as
placing on accused the burden to show that the killing was
without previous malice to reduce the homicide to man-
slaughter.

6   Criminal Law—Defects in Instructions Cured by Other Instruc-
tions—The defect, if any, in an instruction in a homicide case,
authorizing the jury to find accused guilty of wilful murder
on finding that the killing was done with malice aforethought,
and guilty of voluntary manslaughter on finding that the
killing was done in sudden heat of passion and without
previous malice, because leading the jury to believe that the
burden was on accused to show that the killing was without
previous malice to reduce the homicide to manslaughter, was
removed by an instruction that, if the jury had a reasonable
doubt as to whether the crime was wilful murder or voluntary
manslaughter, they should find accused guilty of voluntary
manslaughter.

7.  Homicide—Evidence—Sufficiency—On a trial for homicide,
evidence examined, and held to warrant a conviction of
murder.

RHORER, AINSWORTH & DAWSON, for appellant.

POINTS AND AUTHORITIES.

1. Error in reading indictment for assault. (Martin v. Com-
monwealth, 19 S. W., 580; Commander v. State, 60 Ala., 1; Pickens
v. State, 13 Tex., 353.)

2. Error in reading petition, etc.    (Martin v. Commonwealth,
19 S. W., 580.)

3. Error in instruction on manslaughter.    (Cockrell v. Com-
monwealth, 23 S. W., 659; Martin v. Commonwealth, 78 S.
W., 1104.)

4. Instruction on self-defense.    (Ellis v. Commonwealth, 98 S.

Ball v. Commonwealth.

W., vol. 1, p. 278; Dossenbach v. Commonwealth, 99 S. W., vol. 4, p. 626; Austin v. Commonwealth, 91 S. W., 267.)

B. B. GOLDEN, N. B. HAYS, Attorney General, and C. H. MORRIS, for appellee.

W. T. DAVIS, O. V. RILEY, WM. LEWIS, WM. R LAY, of counsel.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The change of venue and quashal of the first indictment was necessary and proper. (Carroll's Statute 1899, subdivision 3, chapter 35, page 502 et sequor; same, sections 111 and 117 and Constitution of Kentucky, section 11; Adkins, &c., v. Commonwealth, 98 Ky., 539; Baker v. Commonwealth, — Ky. Law Rep., —.)

2. The testimony of the witnesses Fuson and Riley was competent and clearly established a conspiracy against the appellant, C. D. Ball and others. (O'Brien v. Commonwealth, 74 S W., 666; Bishop's New Criminal Procedure, section 1126; Bess v. Commonwealth, 25 Ky. Law Rep., 1091; Thomas v. Same, 1 Ky. Law Rep., 122; O'Brien v. Commonwealth, 89 Ky., 54; Roberts v Same, 10 Ky. Law Rep., 1033; Jackson v. Same, 100 Ky., 239; O'Brien v. Same, 24 Ky. Law Rep., Part II, p. 2511; Greenleaf on Evidence, 16th edition, vol. 1, sec. 53; same, vol. III, sec.15; Elliott on Evidence, vol. IV., sec. 3026. This testimony all being competent under these authorities to show motive and intent as well as to identify appellant as the perpetrator of the crime charged, he having started out to make the defense of an alibi.

3. The indictment returned by the Knox county grand jury was not an indictment against C. D. Ball, but merely included his name as a conspirator and the Knox circuit court did not assume or claim any jurisdiction over him.

OPINION OF THE COURT BY JUDGE LASSING— Affirming.

In October, 1905, appellant, J. F. Ball, shot and killed Jack Bolen in Middlesboro, Ky. He was indicted in the Bell circuit court for murder, and, on motion of the commonwealth, a change of venue was granted to the Knox circuit court. When the case was

called for trial in the Knox circuit court, on motion of the Commonwealth, the indictment was quashed and the case referred to the Knox county grand jury, which returned a new indictment in two counts. The first count charged appellant and his brother, C. D. Ball, with having entered into a conspiracy to kill Jack Bolen, and the second count charged appellant with his murder. Upon this indictment returned by the Knox county grand jury appellant was tried, found guilty, and his punishment fixed at confinement in the penitentiary for life.

The grounds relied upon for reversal in the motion for a new trial are numerous, but we will consider only those which we deem material.

The record shows that appellant had been a candidate for the office of sheriff of Bell county before a Republican primary; that the deceased openly espoused the cause of his opponent on the alleged ground that Ball was not a suitable man for the office, and appellant offers much testimony to the effect that during the progress of that campaign deceased frequently spoke very bitterly and disparagingly of him and his candidacy. Appellant was defeated, and a week or 10 days after his defeat he went to the home of deceased, in which he conducted his business —that of a barber—for the purpose, as he alleges, of ascertaining why deceased had spoken of him as he had heard he had. He admits that he was armed on this occasion, and, although he disclaims any intention on his part of raising a disturbance, or doing any injury to deceased, yet from the evidence it is plain that he and deceased had a wordy altercation, and that but for the timely interference of a citizen and the little 12-year-old daughter of deceased, the result of this visit would have been serious, if not

fatal, to deceased. Deceased ordered him from his house. He left, went outside, and for some little time sat in front of deceased's place of business. He was in an ugly and threatening mood. Thereafter deceased filed suit in the Bell circuit court against appellant, charging that on the occasion of this visit appellant had said to him, "You murdered your wife, and you know it," and later, when the grand jury of Bell county was assembled, he had gone before it and testified as to the difficulty at his house with appellant, and upon this testimony appellant was indicted for assault. Appellant's brother, C. D. Ball, was at the county seat upon the same day that the indictment for assault was returned. Whether appellant knew that this indictment had been returned the record does not show, but it may be fairly inferred from the evidence that he did, inasmuch as he and his brother, C. D. Ball, were seen in an earnest conversation in the rear of deceased's house a short time before the killing, and the record does show that C. D. Ball knew that this indictment had been returned, and was very much incensed because of it. Deceased had in his employ a barber named Lane. About 7:30 o'clock he sent Lane to the hotel a short distance from the barber shop to get some change for $1. When Lane left the shop, deceased was sitting in a chair near the door. As he approached the hotel, he saw three men standing or sitting in front of it, and appellant conversing with them. Ball immediately left the hotel and walked down the street in the direction of the barber shop. When he got opposite the door, he was seen to fire three shots in rapid succession. After the first shot a noise was heard in the shop as though some one or something had fallen upon the floor. After the third shot was fired Ball walked away.

About this time, Lane, having received the change, had returned to the shop, and he and the other people who gathered there found deceased lying upon the floor, as though he had fallen from the chair, his feet rather doubled under him, and his right hand in the right hand pocket of his trousers. He died almost immediately. A bullet wound was found in the back of his head, and, from the undisputed testimony of the doctors who made an examination of the wound, the shot had been fired from behind, the bullet passing entirely through the head. Three holes were found in the screen door near together, and all of them were about three feet from the bottom of the door. Deceased was searched, and had no weapon upon his person other than an ordinary pocketknife. Some cartridges for a 38 Smith & Wesson pistol and some shells for a 12-gauge shotgun were found in his pockets. In one of the stand drawers was a 38 Smith & Wesson pistol, and in the back of his office or bathroom was a double-barrel shotgun. The record shows that after the first altercation with appellant deceased had borrowed a shotgun and secured a pistol, and had stated to several people that he had them for the purpose of defending himself, and some of the witnesses say that he told them he had them for the purpose of killing appellant; but, however this may be, it is certain that on this occasion he was not armed. Appellant, testifying for himself, says that on the evening of the killing, just as he got opposite the door, or nearly so, he spoke to a gentleman who passed; that deceased evidently recognized his voice, and that he thereupon sprang out of his chair and made an effort as though to draw a pistol from his pocket, and, that, believing that he was going to do so and shoot him, he fired the three shots in rapid

succession; that at the time that he fired the first shot deceased was standing erect. The record shows that deceased was a man five feet six inches tall, and that the floor of the barber shop was 17 inches above the level of the pavement, and that the bullet holes in the door were about three feet from the floor, one of the bullets passing through the back of the chair in which deceased was sitting when the witness John Lane left the shop not more than two minutes before he was killed. This is in brief the testimony.

During the progress of the trial, on motion of the commonwealth, the court had the body of the deceased exhumed and examined by skilled physicians, and the testimony of the physicians for both the commonwealth and the accused shows that deceased was shot in the head, the bullet entering below and back of the left ear, and ranging through the head, passed out near the right temple, the range of the bullet being slightly upward. This was the only wound in the head.

Appellant complains that, as no evidence of a conspiracy was shown, the trial court erred in permitting the witnesses Fuson and Riley to tetsify as to the conduct and statements of C. D. Ball, made in Middlesboro, in the office of Riley, and in the presence of Jack Bolen, a day or two before he was killed. This evidence was objected to at the time it was introduced, and admitted over the protest of appellant's counsel. Later the trial court, evidently having some doubt as to whether a conspiracy had been proven, withdrew this testimony from the jury, telling them that it had been introduced or admitted through error, and that they must not consider it for any purpose whatever. Appellant insists that this was most damaging testimony, and that, although it was withdrawn from the

jury, nevertheless it had already produced an effect upon the minds of the jurors from which they could not rid themselves, even though instructed by the court to do so. To this conclusion we cannot agree. During the progress of a trial evidence is frequently offered which at the time it is difficult for the trial judge to know whether it is competent or not. This is especially true in that class of cases where a conspiracy is charged, and it is only after the party offering such evidence has had an opportunity to introduce other proof or other evidence which would make it competent that the court may determine, from a consideration of the whole, whether it is competent or not. If the evidence introduced later has had the effect of making the evidence complained of competent, then it should properly remain for the consideration of the jury, and, if in the opinion of the trial judge it has not done so, then it should be excluded. In the case before us appellant had been heard to say, on an occasion after he had gone to deceased's house and made an assault upon him, that he "would get even with him yet," or words to that effect. After deceased had been assaulted by appellant he had brought suit for slander in the Bell circuit court against appellant, and later, upon the assembling of the grand jury, had gone before the grand jury and given testimony there, upon which testimony appellant had been indicted for an assault. Upon the same day that he appeared before the grand jury, and immediately after he had returned from the grand jury room to the office of Riley, C. D. Ball made the statements about which Fuson and Riley testified, and the commonwealth showed by an unwilling witness that on the evening before the killing C. D. Ball and appellant were seen in a close and earnest conversa-

tion in the alley near the Bolen house, and both were looking in the direction of the Bolen house; and, although appellant testified, he offered no explanation whatever of their presence there, or as to the subject of their conversation. This was all of the testimony upon the question of conspiracy that the commonwealth was able to introduce, and the trial court, evidently entertaining a doubt as to whether or not a conspiracy had been proven, excluded from the consideration of the jury all of the testimony offered by the commonwealth as to the statements made by C. D. Ball in the presence of the witnesses Fuson and Riley. This ruling of the trial court was certainly not prejudicial to appellant.

Appellant also complains that the trial court erred to his prejudice in permitting to be read to the jury the indictment returned by the Bell circuit court, in which appellant was charged with having committed an assault upon deceased, and also the petition filed in the Bell circuit court by deceased, in which he sought to recover damages from appellant for having spoken of him certain alleged slanderous words. This evidence was introduced by the commonwealth for the purpose of showing a motive on the part of appellant for the commission of the crime, and, as the court expressly told the jury that this evidence was admitted for this purpose, and for this purpose only, we cannot see how appellant was prejudiced thereby. Besides, witnesses testified fully as to all facts which were disclosed by both the indictment and the petition, and the court especially instructed the jury that this testimony was to be considered for the sole purpose of showing a motive. It was competent for this purpose for the commonwealth to show that deceased had procured an indictment against accused charging

him with assault, and also to show that deceased had filed a suit against him in the Bell circuit court seeking to recover damages for the speaking of certain slanderous words. These facts were shown by the testimony of several witnesses, and the introduction of the record evidence upon this point was but cumulative; and we cannot believe that the jury failed to fully understand the purpose for which this record was introduced, since they were told by the court at the time it was introduced the purpose for which it might be introduced, and were later, in an instruction, told for what purpose alone it might be considered.

Appellant also complains of the admonition of the court touching the evidence of the witness Pat Rice. This witness testified that he was upon the same side of the street that appellant was at the time when the shots were fired, and he admitted upon the stand that he had told another witness that he was upon the opposite side of the street. He asked if he had not so stated, and he said that he had. To this question and answer appellant at the time objected, and the court thereupon told the jury that this evidence as to what he had stated to the witness Buckley, before he was called and sworn as a witness, could be considered by them only as tending to contradict or impeach the witness Rice, if it did so. We fail to see wherein appellant was prejudiced by this ruling of the court. On the contrary, we are of opinion that it would have been error if the court had not so instructed the jury; for this court, in the case of Ashcraft v. Commonwealth, 68 S. W. 847, 24 Ky. Law Rep. 488, expressly held that while "it was competent, under sections 597, 598, of Bullitt's Codes 1902, to discredit the witness by proving that he had at another time made a different statement to that con-

tained in his testimony, but such evidence was only admissible for the purpose of impeaching the witness, and not as substantive testimony for appellee. The court should so have instructed the jury.'' And the same rule was laid down in Jones v. Commonwealth, 46 S. W. 217, 20 Ky. Law Rep. 355; Collins v. Commonwealth (Ky.) 25 S. W. 743, 15 Ky. Law Rep. 691-835; Fueston v. Commonwealth, 91 Ky. 230, 15 S. W. 177, 12 Ky. Law Rep. 854; Mullins v. Commonwealth, 67 S. W. 824, 23 Ky. Law Rep. 2433

The only other grounds upon which appellant seeks a reversal, which we deem it necessary to notice, are that the court did not properly instruct the jury, and that the evidence does not support the verdict.

We will first consider the instructions. The instructions given by the court are as follows:

''No. 1.  If you shall believe from the evidence, beyond a reasonable doubt, that the defendant, J. F. Ball, in Bell county, Ky., before the finding of the indictment herein, wilfully and feloniously shot at and wounded Jack Bolen, so as to cause or hasten his death within a year and a day thereafter, not in his necessary or reasonably apparent necessary self-defense, then you ought to find him guilty: Guilty of wilful murder, as charged in the indictment herein, if you shall believe from the evidence, beyond a reasonable doubt, that such shooting and killing of the deceased was done with malice aforethought. Guilty of voluntary manslaughter, included in the indictment herein, if you shall believe from the evidence, beyond a reasonable doubt, that shooting at and killing of the deceased was done in sudden heat of passion or in sudden affray and without previous malice, or under some provocation which was reasonably calculated to excite the passions of the defendant beyond

his power of self-control. If you find defendant guilty of wilful murder, as charged in the indictment herein, you will fix his punishment at death or at confinement in the state penitentiary for life, in your discretion, according to the proof. If you find him guilty of voluntary manslaughter, included in the indictment herein, then you will fix his punishment at confinement in the state penitentiary for a period of not less than two nor more than twenty-one years, in your discretion, according to the proof. If you find him not guilty, you will say so, and no more.

"No. 2. (a) The words 'wilful' and 'wilfully,' as used in these instructions, and in the indictment herein, mean intentionally; not accidental or involuntary. (b) The word 'feloniously,' as used in these instructions, and in the indictment herein, means proceeding from an evil heart or purpose; done with the deliberate intention of committing a crime. (c) The phrase 'with malice aforethought,' as used in these instructions and in the indictment herein, means a predetermination to do the act of killing without legal excuse; and it is immaterial at what time before the killing such a determination was formed. (d) The court has heretofore said to the jury, from time to time, that certain evidence was admitted for the purpose, and so far only as it might tend to show motive, if it did so tend. The word 'motive,' as used by the court in these instructions, means reason, cause, inducement, and incentive to do the acts and things charged in the indictment herein.

"No. 3. If you shall believe from the evidence that at the time the defendant, J. F. Ball, so shot and wounded Jack Bolen, as to cause or hasten his death within a year and a day thereafter (if you shall believe from the evidence, beyond a reasonable doubt,

that he did so), he believed and had reasonable grounds to believe that he was then and there in danger of immediate death or some great bodily harm at the hands of said Bolen, and that it was necessary, or was believed by the defendant, in the exercise of a reasonable judgment, to be necessary, to shoot at and kill deceased, in order to avert that danger, real or to the defendant apparent, then you ought to acquit the defendant, upon the grounds of self-defense or apparent necessity therefor.

"No. 4.  If you shall have a reasonable doubt from the evidence of the defendant having been proven guilty, you ought to find him not guilty; or, if you shall believe, from the evidence, beyond a reasonable doubt, that the defendant has been proven guilty, but shall have a reasonable doubt from the evidence as to whether his crime be 'wilful murder,' as charged in the indictment herein, or the lower offense of voluntary manslaughter, included in the indictment herein, then you ought to find him guilty of such 'lower offense,' of voluntary manslaughter, and fix his punishment as provided for voluntary manslaughter in instruction No. 1 above."

Appellant insists that, because of the limitation placed in and upon the manslaughter instruction by the words "without previous malice" the burden is placed upon appellant to show that the killing was "without previous malice." This interpretation, however, is not correct, and the instruction is not subject to the criticism thus placed upon it by appellant. By this instruction appellant was not required to show that the killing was "without previous malice," but the jury were told they must believe from the evidence beyond a reasonable doubt that the killing was done "with malice aforethought" before they

could convict appellant of murder, and, under the
second paragraph of this instruction, they were re-
quired to believe from the evidence beyond a reason-
able doubt that the killing was done "without
previous malice," and in sudden heat and passion,
before they could convict him of manslaughter.
Under this instruction, the burden is all the time
placed upon the commonwealth to show from the evi-
dence, to the exclusion of a reasonable doubt, that
appellant was guilty before the jury would be war-
ranted in finding him guilty. It is true that the more
usual practice is to separate the instruction for man-
slaughter from the instruction for murder; but, while
this is the more usual practice, this court has never
held that they may not be embodied in one instruction.
On the other hand, it has frequently approved of in-
structions in which they were embodied in the same in-
struction, and in the recent case of O'Day v. Common-
wealth practically this same instruction, was approved
by this court. It is immaterial whether the thought
is embodied in one instruction or more, so long as
the entire law of the case, as warranted by the facts
and circumstances, is fairly and intelligently pre-
sented to the jury. Courts look to substance more
than to form. This being true it has been repeatedly
held by this court, and courts of last resort in other
States, that the instructions must be read as a whole,
and if, when so read, they fairly present to the jury
all the law of the case, the accused cannot complain.
While to our minds there can be no doubt whatever
but what the jury thoroughly understood instruction
number one, which embodied the law upon the subject
of both murder and manslaughter, yet, if there had
been a doubt in the minds of the jury as to the mean-
ing of this instruction, it certainly was removed by

the further and last instruction, in which the jury was told that if it had a reasonable doubt as to whether the crime of defendant be wilful murder, or the lower offense of voluntary manslaughter, then it was the duty of the jury to find him guilty of voluntary manslaughter.

The record before us is quite a voluminous one, showing that the trial was necessarily long and tedious, and it would be next to impossible in the conduct of such a trial for the trial court to prevent minor errors from creeping into the record, but a careful examination of this entire record fails to disclose any error prejudicial to the substantial rights of appellant.

Finding no error in the ruling of the court that would warrant a reversal, we come lastly to a consideration of the question as to whether or not the evidence supports the verdict of the jury. It is urged for appellant that, as there was no eyewitnesses to the tragedy, the jury should have accepted as true the theory and statement of appellant as to how it occurred. The record refutes this idea, for several witnesses saw, at least, a part of it, and one saw all of it, so far as the conduct of appellant was concerned. Appellant himself gave to the jury his own statement of it. If there was other evidence in the case than that of the witnesses who testified as to what they saw appellant do on that occasion, there might be some plausibility in the contention of appellant that he acted in self-defense; but standing out against this testimony are the plain undisputed, incontrovertible facts, the silent witnesses which appellant himself made it possible for the commonwealth to introduce into this case—the three holes through the screen door. one of which passed through the

back of the chair in which deceased was sitting a few moments before he was shot. One of these holes through the door was three feet above the floor of the shop, one was three feet two inches, and the third was three feet and eight inches. Appellant at the time he fired the shot was standing upon the pavement, which is shown, by actual measurement, to be seventeen inches lower than the floor of the shop, so that at the time the shot was fired through this door appellant's arm must have been elevated not more than four feet five inches, if brought to a level with the lowest hole through the door, or five feet three inches, if brought to a level with the highest hole through the screen door. Deceased was five feet six inches tall. Therefore, if standing upon the floor of the shop which was elevated seventeen inches above the sidewalk, the top of his head would have been six feet eleven inches above the pavement. It will thus be seen, by actual demonstration, that it would have been a physical impossibility for any one of the shots fired through the door to have struck him in the head had he been standing. This evidence—these physical facts—flatly contradict the statement of appellant that deceased was standing at the time he was shot; on the other hand, they show beyond question that he was seated in the chair at that time. Another evidence that this is true, and that the range of the bullets was on a level with a line about three feet from the floor, is the fact that one of the bullets passed through the back of the chair in which deceased was sitting when last seen alive before he was shot. Another physical fact which directly contradicts the statement of appellant is the wound in the head of deceased. He states that at the time he fired the fatal shot deceased was looking at him, but this wound in

the back of deceased's head says that this statement is not true, but, on the contrary, that at the time deceased was shot his head was turned in almost an opposite direction. The memory of witnesses, because of the excitement of the occasion, or due to the lapse of time, may become faulty, and cannot always be depended upon to correctly report an occurrence, but not so with physical facts. These, when they speak at all, speak with an accuracy that cannot be questioned. No number of witnesses testifying to the contrary could outweigh the physical facts that deceased was shot in the back of the head, as evidenced by the wound itself, nor the further physical fact, as shown by the holes through the door and the hole in the back of the chair, that deceased must have received the fatal shot while seated, and that he could not have been shot in the head if standing, as appellant says he was. While it is true that no living witness was produced by the commonwealth to testify as to what deceased was doing or attempting to do at the time he was killed, yet, as opposed to the statements of appellant, the commonwealth offered to the jury these physical facts, and with all of the testimony and the facts and circumstances surrounding this killing before them, it was the province of the jury to say whether or not appellant was guilty as charged. They have said he was, and we are of opinion that the proof in this case amply supports their verdict.

The judgment is affirmed.