## South Covington & Cincinnati Street Railway Company v. Finan's Admx.

(Decided April 23, 1913.)

Appeal from Kenton Circuit Court
(Common Law & Equity Division).

1. Personal Injuries—Inflicted by Interstate Carrier—Federal Employers' Liability Act.—The Act of Congress, approved April 21, 1908, and known as the Employers' Liability Act, superseded all other statutes, as well as the common law, upon the subject of the liability of a common carrier by railroad for personal injuries to an employee, in so far as the injuries are inflicted by a train engaged in interstate commerce.

2. Employers' Liability Act—Interstate Carrier.—Where a motorman of an electric car, traveling from Newport, Ky., over a bridge spanning the Ohio River, and into Cincinnati, Ohio, was injured by the car jumping the track after it had reached the Ohio side of the river, his cause of action was controlled by the federal Employers' Liability Act of 1908.

3. Evidence—Witness Cannot Be Cross Examined Upon Collateral Facts for Purpose of Contradicting Him.—It is a rule of evidence that a witness cannot be cross-examined on facts which are collateral and irrelevant to the issue, merely for the purpose of contradicting him, his answers about such facts being conclusive against the party calling for them.

4. Evidence—When Witness Can Be Cross-Examined Upon Collateral Facts.—A witness can be cross-examined on collateral facts

only for the purpose of impeaching him, and it is reversible error for the court to admit such testimony to prove a substantive fact, and without limiting such testimony to the purposes of impeachment.

5. Evidence—Inspection.—A tribunal of fact receives evidence through three channels; inspection, documents, and witnesses. What the court will allow the jury to see for itself is largely within the administrative function of the judge, who will permit the use of the court room for deviations from the regular routine of trials, only when satisfied that the interests of substantial justice warrant him in so doing.

6. Evidence—When Inspection by Jury Will Be Allowed.—Where it is claimed that the defective wheels and brakes of an electric car caused the accident, and a motion is timely made to have the jury inspect the wheels and brakes, the trial court should sustain the motion, when it can be conveniently done, and it is shown they are in substantially the same condition as they were when the accident occurred.

ROBERT C. SIMMONS for appellant.

MYERS & HOWARD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Henry M. Finan, a motorman in the service of the appellant railway company, was directed to take a car from the company's barn in Newport, Kentucky, to Fountain Square in Cincinnati, Ohio. He left the car barn in Newport about five o'clock in the afternoon, and his course led him across the Central Broadway Bridge, which spans the Ohio River from the foot of York Street in Newport, Kentucky, to the foot of Broadway in Cincinnati, Ohio. The bridge has a decided apex about its middle, and from that point it steadily declines towards the Ohio side. At a point 674 feet north from the apex, or crest of the bridge, it turns to the left at an angle of 52 degrees. The car carried Finan the motorman, Wessling the conductor, and Hempel, Holo and Schroll as passengers. After the car had passed the apex of the bridge, it gathered speed. When it reached the angle or turn of the bridge above referred to, it was moving at a high rate of speed, and, instead of following the track around the curve, it jumped the track, crossed the adjoining footway, went through the railing located on the side of the bridge, and fell to the ground below a distance of about 30 feet. Every one in the car was badly injured, Finan's injuries resulting in his death the next day. His administratrix

brought this suit for damages, and having recovered a verdict and judgment for $10,000, the defendant prosecutes this appeal.

The petition alleges that appellant was an interstate carrier of passengers; and, for cause of action it alleges that the flanges of the car wheels were worn, nicked and broken, so that the car could easily leave the rails, especially on abrupt curves, such as existed at the point in question. It was further alleged that the brake shoes of the car were so worn and defective as to make it impossible for Finan to control the movements of the car; and that all of these facts were known, and could have been known by the exercise of reasonable care upon the part of appellant, but were unknown to the decedent, and could not have been known by him in the exercise of ordinary care on his part.

Appellee's cause of action was stated in three separate, numbered paragraphs. In the first paragraph she states the facts showing how the accident happened, adding thereto the averments above noted as to the condition of the car and its equipment, and the negligence of appellant in permitting its car to be used with knowledge of its defective condition, or with failing to use ordinary care to discover it. It also negatives decedent's want of knowledge of the defective condition of the car. The second paragraph alleges that the car in question was an instrument of interstate commerce; and, after again describing the defective condition of the car, it further alleges that decedent's injuries and death were caused by the gross, wanton and wilful carelessness and negligence of appellant, as above stated. The third paragraph, after again reciting the manner in which the accident happened, and again repeating the allegations as to the defective equipment of the car, further alleges that under a statute of the State of Ohio, in which State the accident happened, appellee was entitled to recover for the death of her intestate. The Ohio statutes are set out in full in the petition. During the trial, an amended petition was filed making additional reference to the law of Ohio, in so far as same abrogates or modifies the fellow-servant doctrine. Before answering, appellant moved the court to require appellee to elect which cause of action set up in the petition she would prosecute, but this motion was overruled; and without waiving the objection, appellant answered, traversing the allegations of the petition, and interposing a plea of contributory negligence, which was

traversed by a reply. When the case was called for trial, appellant renewed its motion to require appellee to elect, but the motion was again overruled. At the conclusion of the evidence, appellant moved to exclude all evidence and matters in the pleading pertaining to the law of Ohio, but this motion was also overruled.

The evidence as to the facts immediately connected with the accident is brief, and without any substantial contradiction. Appellee introduced Hempel, a passenger, who sat on the left side of the car. He testified that he noticed the car was going fast just before the accident, and that he could see the motorman standing in his position, and could see his left hand throw off the current, his right hand operating the brake. Holo, the other passenger, was sitting on the opposite side of the car from Hempel, and testified he saw the motorman working the brake, but without result toward checking the speed of the car, which began to increase soon after the car passed the toll office on the Newport side, and before the car began its descent on the Cincinnati side. He says Finan began to work on the brakes soon after it started down the hill. Schroll was sitting in the extreme end on the right side of the car talking to the conductor, who was standing on the inside of the car with his back against the rear door. Schroll did not notice the excessive speed of the car until it was within about 200 feet of the curve, and did not see the motorman as he did not look in that direction. Wessling, the conductor, had gone inside the car to arrange the ventilators; and, when asked whether he could see the motorman, he replied that he could not, because the blinds were down. There was evidence to the effect that the car wheels were cracked, that the flanges were cracked over an inch or so, and pieces as big as one's thumb were broken out of the rim of the wheel; that the brake shoes were worn down to half their original thickness, and that a new shoe would stop a car with ease, while an old shoe required more effort and strength. This, with proof of the Ohio law, and the mortality tables, constituted the substance of appellee's proof.

Appellant submitted evidence tending to show that the wheels were sound, except some chips on the inner side of the flanges of the rear wheel, which did not come in contact with the rail; that the front wheels were in perfect condition, and that the front wheels first left the track. By its master mechanic, appellant further showed that

the front wheels were comparatively new, having been put on in May, 1910, and that they first left the track. There was other evidence tending to show the good condition of the brake shoes and the car immediately before the accident.

As grounds for a reversal, appellant assigns the following errors: (1) that the Act of Congress, approved April 22, 1908, and commonly known as the "Employers Liability Act," superseded the Ohio statute under which the case was actually tried, and that the court erred in overruling appellant's motion to require appellee to elect which cause of action she would prosecute, and in overruling appellant's motion to strike from the petition the paragraph which set up and relied upon the Ohio statute; (2) that the lower court erred in permitting the contradiction of the witness Wessling; and (3) in refusing to permit the jury to inspect the wheels of the car.

1. The Employers Liability Act was passed by Congress in the exercise of its constitutional authority to regulate interstate commerce. It provides that every common carrier by railroad, while engaged in commerce between the States, shall be liable in damages to any person suffering injury, while employed by such carrier in such commerce, where injury or death results from any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, tracks, road bed, work boats, wharves, or other equipment. The constitutionality of that act has been sustained by the Supreme Court of the United States in Mondou v. N. Y., N. H. & H. R. Co., 223 U. S., 1; 38 L. R. A. (N. S.) 44; M. K. & T. Ry. Co. v. Wulf, 226 U. S., 570; and Michigan Central R R. Co. v. Vreeland, 227 U. S., 59. In these cases it was held that the effect of the Employers Liability Act was to supersede the State laws upon the subject; and that being true, there can be no doubt that the Employers Liability Act of 1908 superseded all other statutes, as well as the common law, in so far as interstate commerce was involved, and that the Ohio act, pleaded and relied upon in this case, and under which this case was tried and the instructions were drawn, was abrogated by said federal statute, in so far as this case was concerned. The petition shows that appellant is an interstate carrier of passengers, and that Finan was injured while engaged in appellant's business as an interstate carrier. Any recovery, therefore, which appellee would be entitled to in this action must be regulated by and be in conformity with

the provisions of the Act of Congress. It is admitted that the case was tried under the Ohio statute, and that the rulings of the court upon the admission of evidence and in instructing the jury were made under the Ohio statute. That statute makes the mere proof of the existence of defects in appliances *prima facie* evidence of negligence; and that having been shown, it throws the burden of disproving negligence upon the employer. The first instruction given in this case carries out this idea, and did not require the plaintiff to make out any case of negligence beyond the bare proof of the alleged defective condition of the wheels of the car. The paragraph of the petition in which the Ohio statute was pleaded did not couple an allegation of negligence with the averments set up in the petition, as it was not considered necessary that it should be done. Furthermore, in his instruction as to the amount of recovery, the court adopted the maximum fixed by the Ohio statute, which is limited to $12,000. It will be noticed that the Ohio statute differs radically from the Employers Liability Act in giving a basis upon which the recovery can be had, since under section 6243 of the Ohio Statutes a *prima facie* case of negligence on the part of the employer is made out when any defect or unsafe condition is shown in the cars, while under the Federal statute the plaintiff must show negligence under the rules ordinarily applicable to cases of that character. It was therefore impossible for the court to proceed under both statutes; it must of necessity proceed under one, and discard the other. In view, therefore, of the fact that the Federal Act superseded the Ohio statute, it necessarily controlled this case, which is admitted by all parties to be a case of interstate commerce. In instructing under the Ohio statute, and in refusing to require the plaintiff to elect under which paragraph of the petition she would prosecute her case, the circuit court was in error.

2. The conductor Wessling had testified on the direct examination that he could not see the motorman because the blinds were down. On cross-examination, Wessling was asked various questions as to a visit to him by Mrs. Finan and her sister, and whether he did not state to those ladies that on the occasion of the accident he could see the motorman of the car, and that the motorman was applying the brakes as hard as he could. To this Wessling replied in the negative; and appellee having called Mrs. Finan and her sister to contradict Wessling, they

were, over appellant's objection, permitted to testify that Wessling had said he saw Finan working at the brake. Mrs. Finan testified that Wessling said to her on two different occasions that he saw Finan working at the brake; that he started to try to turn off the lever; that there must have been something wrong with the brake, as it failed to work, or would not work; and further that Wessling had said to her that when the car was changed to work the other end, the brake would not work; that the brake was broken, and that he knew it. The purpose of this testimony was to show, by the negative declarations of Wessling and not made under oath, that Finan was working at the brake which failed to serve its purpose. It will be observed that on his direct examination Wessling said nothing as to the condition of the brake, or as to the movements of Finan; he merely said he could not see Finan because the curtain was down. It was on cross-examination, and in response to questions as to whether he had made statements concerning these matters to Mrs. Finan and her sister, that he said he had not said anything to them about it. Under this state of facts it is contended by appellant that Wessling having failed to testify affirmatively as to these substantive facts, he could not be so cross-examined as to make his alleged declarations on these subjects substantive testimony. As a general rule a witness cannot be cross-examined as to any distinct collateral or irrelevant fact merely for the purpose of contradicting him by other evidence, if he should deny it. Kennedy v. Commonwealth, 14 Bush, 359. But the fact whether the curtain was down was a relevant fact. In Hayden v. Commonwealth, 140 Ky., 634, the rule was laid down as follows:

"If the inquiry relates to a collateral fact, the answer of the witness is conclusive. He cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence and discrediting his testimony in case he denies the fact. (Kennedy v. Commonwealth, 14 Bush, 340; Cornelius v. Commonwealth, 15 B. Mon., 539; Crittenden v. Commonwealth, 82 Ky., 164)."

No one would pretend to claim that appellee should be allowed to prove as a substantive fact or as a matter in chief, that Wessling said he did not see Finan working at the brake because the curtain was down; yet, this is precisely what appellee did through the cross-examina-

tion. At most it was competent only for the purpose of impeaching Wessling.

In Loving v. Commonwealth, 80 Ky., 507, 511, the court said:

"It is a rule of evidence that a witness cannot be cross-examined on facts which are collateral and irrelevant to the issue for the purpose of contradicting him, his answers about such facts being conclusive against the party calling for them.

"Nor can a witness who fails to testify to substantive facts be asked if he has not made statements to others out of court that such facts exist, for the purpose of proving that he had made such statements, as that would transform declarations made out of court, and not under the sanction of an oath, into substantive testimony."

See Owensboro City Ry. Co. v. Allen, 32 Ky. L. R., 1356.

In neither direct nor cross-examination did Wessling make any declaration as to the actions or motions of Finan, or as to the condition of the brake. The effect of allowing Wessling to be thus contradicted as to matters entirely independent of and outside of the scope of his answers was to bring before the jury in this way matter concerning which he had made no statements under oath. This was substantive evidence; and being relevant to the issue it was admissible, only, however, for the purpose of impeaching the credibility of Wessling. The court should have so limited the testimony by cautioning the jury to that effect; and its failure to do so was error. Fueston v. Commonwealth, 91 Ky., 233; Jones v. Commonwealth, 22 Ky. L. R., 355; Collings v. Commonwealth, 15 Ky. L. R., 691; Fuqua v. Commonwealth, 24 Ky. L. R., 2207; Mullins v. Commonwealth, 23 Ky. L. R., 243; Ashcraft v. Commonwealth, 24 Ky. L. R., 490; Ball v. Commonwealth, 125 Ky., 610; Ochsner v. Commonwealth, 128 Ky., 766; Redden v. Commonwealth, 140 Ky., 98.

3. It was claimed by appellant that the physical evidence all pointed to the fact that the front wheels of the car left the track first; that they were in almost perfect condition, and that there were some slight chips on the rear wheels which did not, however, affect their usefulness. Appellee's witness Large testified that immediately after the wreck he examined the wheels, and that there were large chipped places, about an inch apart, and about the size of one's thumb, on both front and rear wheels.

Large was contradicted in this respect by the testimony of several witnesses; but, in order to convince the jury on this point, appellant offered, by a motion, to exhibit the wheels. This motion was made early in the action, accompanied by an offer to either carry the jury to appellant's car barn in Newport, which was about a fifteen minutes' ride from the court house, or to bring the wheels to some convenient place near the court house, they being too heavy and too bulky to bring into the court room. The court overruled the motion, and the appellant contends that this was a reversible error.

In treating of the subject of inspection as a branch of evidence, the author in 17 Cyc., 290, says:

"The tribunal of fact receives evidence through three channels: inspection, documents and witnesses. Evidence gained by inspection covers facts which the tribunal cognizes with its own senses; sees, hears, smells, tastes, or otherwise perceives for itself.

"What the court will allow the jury to see for itself is largely within the administrative function of the judge, who will permit the use of the courtroom for deviations from the usual routine of trials only when satisfied that the interests of substantial justice warrant him in so doing. It is part of his function to decide necessary preliminary questions of fact, as the accuracy of a photograph, or the identity of articles offered in evidence. Having reached the conclusion that the information to be gained by inspection is relevant, the court decides for example that an experiment may or may not be tried in court; that the jury shall be granted or refused a view or real or personal property; or that an injured limb may be exhibited to the jury. * * * The court may in its discretion refuse to compel a party to submit atricles to the inspection of the jury. But inspection evidence should be received where it is both relevant and highly probative and better evidence cannot reasonably be expected and the dangers of its use are small in comparison to the advantages. * * * Any article made important by the evidence or by the nature of the investigation may be produced for inspection. Inspection evidence of this character may range over any line of human activity, as building, or mechanical trades, the medical or surgical profession, or nautical affairs. It may cover the tools, as in burglary or counterfeiting, or the bullet, firearms, or other weapon, as in homicide or as-

sault, with which a crime was committed; or the clothes which defendant, or an injured person, or a witness, wore under relevant circumstances, provided that the articles offered be identified to the satisfcation of the judge, and that it be also shown to his satisfaction that no other substantial change in the articles exhibited as to render the evidence misleading has taken place."

This general rule has been widely applied, and many interesting instances of its application appear in the books. For instance, casts of relevant objects made of sand, or other substances are generally admitted to be exhibited to the jury; and in any case where the nature and properties of an article require consideration by the jury, it is not improper to submit a duplicate or fac-simile conveying the correct impression. American Express Co. v. Spillman, 90 Ill., 455. A witness may use his own body or that of another person or a bicycle to illustrate the evidence. Taylor v. McGrath, 9 Ind. App., 30. The model of a machine and other mechanical devices may be submitted to the jury to show how an event occurred or might have been prevented, or for any other relevant purpose. In Line v. Taylor, 3 F. F., 731, a dog was produced in court; and in Dillard v. State, 58 Miss., 368, a horse which was the subject of litigation was inspected by the jury outside the courtroom. And we see no objection to an application of this rule to the case at bar. When a car or train leaves the track it is apparent that the track or machinery, or some portion thereof is not in proper condition, or the machinery is not properly operated. The controversy here is over the condition of the wheels of the car. Appellee contends that they were so fatally defective as to cause the accident; while appellant contends the contrary and offers to produce the wheels to sustain its view. This character of evidence is competent when the object to be exhibited is shown to be in substantially the same condition as it was when the accident occurred. Choctaw Electric Co. v. Clark, 28 Okla., 399; 114 Pac., 732. In King v. N. Y. C. & H. R. Ry. Co., 72 N. Y., 607, a broken hook was exhibited to the jury. In Boucher v. Robenson Mills, 182 Mass., 500, a portion of a belt was likewise exhibited to the jury; while in Gulf C. & S. F. Ry. Co. v. Boyce, 39 Tex. Civ. App., 195, a rotten tie of a railroad bed was likewise admitted. In Viellesse v. City of Green Bay, 110 Wis., 160, a rotten plank in a sidewalk was inspected by

the jury. See also Warren v. City Electric Co., 141 Mich., 298; Walker v. McNeil, 17 Wash., 582; State v. Goddard, 146 Mo., 177; Walker v. Village of Onterior, 118 Wis., 546.

In Roberts v. Port Blakey Mills Co., 30 Wash., 25, as here, the defendant offered to have an inspection by the jury of a broken flange of a car wheel to sustain its contention that the wheel was a sufficient and proper wheel for the purpose for which it was used; and, in sustaining the motion, the Supreme Court of Washington said:

"We think the piece of broken flange was competent as illustrative of the piece which had been examined at the time of the accident, upon the principle that a drawing or model or photograph is admissible to explain oral evidence, in order that the jury may understand and apply the oral evidence in connection therewith."

The same principle was announced in the late case of City of Louisville v. Uebelhor, 142 Ky., 151, where the defendant was permitted to have the jury inspect an alleged depression in a granite street, when it was shown there had been no change in the street between the time of the accident and the trial.

In the case at bar, the motion to have the jury inspect the car wheels was timely made and upon reasonable conditions; and as the evidence was relevant the court should have sustained the motion.

The judgment is reversed and the case remanded for further proceedings consistent herewith.