NELSON *v.* IRONWOOD & BESSEMER RAILWAY & LIGHT CO.

1. MASTER AND SERVANT — COMMON CARRIER RAILROAD — STREET RAILWAYS—FEDERAL EMPLOYERS' LIABILITY ACT.
    A street railway company engaged in transporting passengers from one State into another is a "common carrier by railroad" within the meaning of the Federal employers' liability act. 35 U. S. Stat. 65.

2. SAME—COMMERCE—INTERSTATE COMMERCE.
    A motorman on a street car whose run was wholly within

the limits of one State, but who, when his run was completed, turned his car over to another crew who took it across the line into another State, was engaged in interstate commerce within the meaning of the Federal employers' liability act, since the car upon which he was employed was an instrumentality engaged in interstate commerce.

3. SAME—PERSONAL INJURIES — FEDERAL ACT — DEFENSES — CONTRIBUTORY NEGLIGENCE.

Where a servant's action for personal injuries was submitted on the erroneous theory that the Federal employers' liability act did not apply, and defendant was thereby deprived of the defense of plaintiff's contributory negligence, which, under the facts, was a question for the jury, reversible error was committed.

4. SAME—WORKMEN'S COMPENSATION ACT—SETTLEMENT.

An agreement for compensation to an injured servant was not binding upon him where the master had not elected to come under the workmen's compensation act.

5. SAME—RELEASE—RETURN OF MONEY—BAR TO ACTION.

Plaintiff's failure to return certain payments received was not a bar to an action for personal injuries, as a matter of law, where he claimed he did not understand they were paid in settlement of defendant's disputed liability.

Error to Gogebic; Cooper, J. Submitted October 11, 1918. (Docket No. 47.) Decided December 27, 1918. Rehearing denied May 1, 1919.

Case by Victor O. Nelson against the Ironwood & Bessemer Railway & Light Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Charles M. Humphrey* (*Sanborn, Lamoreaux & Pray,* of counsel), for appellant.

*James A. O'Neill* (*S. G. Nelson,* of counsel), for appellee.

KUHN, J. The defendant is a corporation admitted to do business in both Michigan and Wisconsin, and

at the time of the accident which gives rise to this litigation, was operating a street railway and interurban system, the entire system extending from the city of Bessemer, as its eastern terminus, in the State of Michigan, to the village of Gile, Wisconsin, as its western terminus. Its tracks were laid along the main streets of the city of Ironwood, Michigan, and the village of Hurley, in the State of Wisconsin. It operated interurban cars from the city of Bessemer to a point in the city of Ironwood, a short distance east of the State line. It also operated cars, designated as local cars, from Jessieville, a suburb within the city limits of Ironwood, through the city of Ironwood, through Hurley, Wisconsin, to Gile.

The plaintiff, at the time of the accident, was employed as a motorman on one of the city or local cars. His employment was limited to the city of Ironwood, and he commenced his run at a point in that city, took his car on a trip eastward through the city to the eastern terminal of the line at Jessieville and returned to the point at which he took charge, being at all times in the city of Ironwood. When he completed his run through the city of Ironwood, the car was turned over to another crew, the conductor on the plaintiff's run becoming the motorman, and the car was then taken on a trip across the line into Hurley, Wisconsin, and return.

On the night of the accident, at about 8:30 in the evening, the plaintiff had taken his car on the trip through Ironwood to the eastern terminal of the line and was returning without any passengers. As the car turned the corner of Ayer and Marquette streets in the city of Ironwood, the trolley pole came off the trolley wire, and, as was his duty, he went to the rear of the car with reference to it. In replacing the trolley pole, it was necessary for him to stand between the rails of the track in the rear of his car and man-

ipulate a rope that was attached to the trolley pole. As he was in the act of replacing the trolley pole, an interurban car approached rapidly from the rear and collided with his car, which resulted in the plaintiff being caught between the cars and severely injured, and as a result he lost his left leg at the thigh.

At the time of the accident the defendant railway company had not elected to come under the State workmen's compensation law, and this action was brought to recover damages as a common-law action, resulting in a verdict for the plaintiff in the sum of $12,500.

At the time the plaintiff was injured, he was 21 years of age and had resided in the United States a little over two years, having immigrated from Sweden, and it is claimed that he was unable to speak or read the English language and could understand but little of it. The defendant, on the trial, pleaded settlement and release, and there was offered and received in evidence on the trial, over the objection of plaintiff's counsel, an instrument purporting to be an agreement in regard to compensation, signed by the plaintiff and bearing date of November 1, 1916, seven days after the accident. This agreement was made out on the usual blank form used by the industrial accident board. The defendant at the time of the accident was not subject to the provisions of the workmen's compensation act and did not elect to come under that act for several months thereafter. This paper was signed by plaintiff while he was confined in the hospital, and about a month later he received a check for a little over $8, and thereafter he was paid about $16 every two weeks until the following March, a period of about three months. After he had consulted his counsel, he was advised to no longer accept payments and did not accept any money thereafter.

The questions which are raised by defendant's coun-

sel are discussed in their brief and were discussed on the argument under three heads, as follows:

"(1) That the parties to this action, at the time of the accident, were subject to the rule of liability established by the Federal employers' liability act, and that the case was improperly submitted to the jury upon the theory that the defenses were taken away.

"(2) That the settlement agreement having been entered into in good faith and the plaintiff, having received payments on that settlement after discovering that the defendant was not under the Michigan workmen's law, ratified and confirmed the settlement agreement.

"(3) That the plaintiff could not maintain his action without returning or offering to return to the defendant the money received by him and the money paid for him under this settlement agreement."

1. Is the defendant a "common carrier by railroad" within the meaning of the Federal employers' liability act? (35 U. S. Stat. 65). In the determination of this question, and in attempting to ascertain what the legislative intent of congress was in passing the act in question, we will necessarily be governed by the Federal decisions. Whether or not it was within the legislative contemplation that the word "railroad" was to include a street railroad must be determined by construing the statute as a whole. Plaintiff's counsel strongly urge that it was not the intention of congress by this act to legislate with reference to the employees of purely local street railways which might be engaged in interstate commerce, and cite, in support of their contention, the case of *Omaha, etc., R. Co.* v. *Interstate Commerce Commission*, 230 U. S. 324 (33 Sup. Ct. 890, 46 L. R. A. [N. S.] 385), where the court construed the act to regulate commerce, and the question was whether street railways became subject to its provisions and under the jurisdiction of the interstate commerce commission. Mr. Justice Lamar, in writing the opinion for the court in that case, showed

the distinction between ordinary street railways and commercial railroads, and reviewed the act, and concluded, from its entire context and from provisions therein contained which were peculiarly applicable to commercial railroads and not to street railways operating only on the streets of cities and villages, that it was not the intent of congress to include purely street railways within the provisions of that act. An examination of the Federal employers' liability act, however, does not, in our opinion, call for the drawing of any such distinction, and, as was said by Mr. Justice Clarke in reference to the *Omaha Case, supra,* in the more recent case of *Washington Ry. & Elec. Co.* v. *Scala,* 244 U. S. 630 (37 Sup. Ct. 654) :

> "The case is of negligible value in determining either the construction of the act we are considering in this case (employers' liability act), or the classification of the defendant, which clearly enough is a suburban railroad common carrier of passengers within the scope of the Federal employers' liability act, as is sufficiently decided by *United States* v. *Railway Co.,* 226 U. S. 14 (33 Sup. Ct. 5) ; *Kansas City Western R. Co.* v. *McAdow,* 240 U. S. 51 (36 Sup. Ct. 252) ; *Spokane, etc., R. Co.* v. *United States,* 241 U. S. 344 (36 Sup. Ct. 668), and *Spokane, etc., R. Co.* v. *Campbell,* 241 U. S. 497 (36 Sup. Ct. 683)."

It seems to us clear that the purpose and intent of the Federal employers' liability act was to establish throughout the United States a uniform rule of broad liability on the part of common carriers by railroad to their employees for negligent personal injuries, in so far as, and to the full extent to which the regulative power of congress extends, in order that the legal status of such employers' liability for negligent injuries inflicted upon an employee while both employer and employee are engaged in interstate commerce, instead of being subject to the uncertainty of varying rules depending upon the particular locality in which

the accident may chance to occur, may be fixed by a single rule, and by such a rule, moreover, as will tend to impel such carriers to avoid or prevent the negligent acts and omissions for which the statute gives the right of recovery, thereby promoting not only the safety of the employees, but also, as a necessary consequence, the safer and less impeded transportation of the objects of commerce, whether freight or passenger. If any distinction whatever can be drawn between street railways and other railroads in any respect that can fairly be claimed to have a possible bearing on the question of the legislative intent of congress as to the inclusion or exclusion of the former class of carriers, the difference, we are convinced, will be found to be merely one of degree and not of kind. No substantial reason suggests itself to us why the safe and unimpeded transportation of passengers from one State into another on a local street railway line operating solely over city streets, and the safety of the employees of such a railway, should not have been objects of solicitude on the part of congress as well as the like beneficial results in connection with other forms of interstate railroad transportation. Nothing in the terms and provisions of the act indicates a design to exclude street railways. Every provision of the act is as applicable to a purely street railway carrier whose lines extend from one State into another, as to an interstate suburban electric railroad or an interstate steam railroad.

In the case of *Arends* v. *Railway Co.*, 172 Mich. 448, this court had under consideration an act of our legislature, the title of which was "An act to prescribe the liability of common carrier railroad companies to their employees," and the express language of section 1 of the act made it applicable to "every common carrier railroad company in this State." (2

204—Mich.—23.

Comp. Laws 1915, § 5496). It was determined in that case that the term "railroad" was broad enough to include street railways.

In our opinion, it must be said that it was the intent of congress by the act in question to include street railways that were engaged in interstate commerce, and therefore, if it can be said that the plaintiff was engaged in interstate commerce at the time of the accident, his action should have been brought under the Federal act. See *South Covington, etc., R. Co.* v. *Finan's Adm'x*, 153 Ky. 340 (155 S. W. 742); *Kiser* v. *Railway Co.*, 188 Mo. App. 169 (175 S. W. 98).

It is the contention of plaintiff that even if it should be held that the defendant, in the operation of its street railway, was under the Federal act, plaintiff was not at the time of the accident engaged in interstate commerce and was not, therefore, subject to the provisions of that act. With this contention we cannot agree. In the instant case the street car upon which the plaintiff was employed was an instrumentality clearly engaged in interstate commerce, and the case comes within the test laid down in *Shanks* v. *Railroad Co.*, 239 U. S. 556 (36 Sup. Ct. 188, L. R. A. 1916C, 797), where it is stated that the question is:

"Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

The car upon which the plaintiff was employed went from one State into the other, and the plaintiff being employed thereon, the case is clearly within the test above set forth, and it must, therefore, be said that he was engaged in interstate commerce. See, also, *North Carolina R. Co.* v. *Zachary*, 232 U. S. 248 (34 Sup. Ct. 305, Ann. Cas. 1914C, 159); *Spokane, etc., R. Co.* v. *Campbell*, 241 U. S. 497 (36 Sup. Ct.

683) ; *Western Oil Refining Co.* v. *Lipscomb,* 244 U. S.
346 (37 Sup. Ct. 623) ; *South Covington, etc., R. Co.*
v. *City of Covington,* 235 U. S. 537 (35 Sup. Ct. 158,
L. R. A. 1915F, 79°) ; *Moliter* v. *Railroad Co.,* 180
Mo. App. 84 (168 S. W. 250).

It is next contended by counsel for plaintiff that,
while under the State law the defenses of negligence
of fellow-servant, contributory negligence, and as-
sumption of risk were not open to defendant, never-
theless there was no prejudicial error committed in
submitting the case on the theory that the case was
not subject to the Federal act, because, under the
facts in this case, the defendant was not deprived of
making any defense that it could have made under
the Federal act, and it is therefore contended that
even if it should be held that the plaintiff was subject
to the Federal act, the judgment should be affirmed.
With this contention we cannot agree, because, under
the Federal act, the question of plaintiff's contribu-
tory negligence might properly be submitted to the
jury as affecting the question of damages, and we are
impressed that, under the facts of this case, the ques-
tion was one of fact, and would necessarily be sub-
mitted to the jury.

2. With reference to the agreement in regard to
compensation, which it is claimed the plaintiff signed
following the accident, we are of the opinion that it
should not be held as a bar to this action. In accept-
ing these compensation checks, plaintiff testified that
he did not know, and was not told, what they were
for, and that he assumed that they were probably
club money, as he had worked on a railroad in the
old country where a fund was provided by the em-
ployees for such contingencies. At the time that the
so-called release agreement was signed, the defendant
had not elected to come under the workmen's compen-
sation act, and the agreement, therefore, was not

binding upon the plaintiff at the time it was executed. See *Bernard* v. *Traction Co.*, 188 Mich. 504. The court, at the request of the defendant, charged the jury that if they found that the agreement in regard to compensation was a mutual agreement and the parties understood each other, or if the plaintiff afterwards ratified the agreement by his action and intent to release the defendant, the plaintiff would be bound by it, and it would be an absolute release. This was as favorable an instruction as the defendant was entitled to. Plaintiff's testimony tended to show that his signature to the instrument was obtained by false and fraudulent representations, and even if it purported to be a release or could be construed to be a release if entered into fairly and understandingly, in our opinion the jury was warranted, under the testimony and the charge of the court, in finding that it was not binding upon the plaintiff.

3. Neither are we of the opinion that, because of the claim that it was not understood by the plaintiff that the amounts received were in settlement of the disputed liability, it follows as a matter of law that a return of the money was necessary. The question was in dispute and should be submitted to the jury. See *Brown* v. *Railroad Co.*, 183 Mich. 574.

Under the declaration filed in this cause, the court should have granted the motion made by the defendant that the plaintiff had not made out a case, as he had elected to stand on his common-law action, it appearing that the parties to the action were both subject to the Federal employers' liability act.

For these reasons the judgment must be reversed and a new trial granted.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.