## CLAUDE ROBERTS and BESSIE ROBERTS, Respondents, v. BENJ. W. TRUNK, Appellant.

### Kansas City Court of Appeals, May 4, 1914.

1. **NEGLIGENCE: Automobiles: Frightened Horse.** The plaintiffs, who are husband and wife, sued to recover damages for the death of their infant child, which was thrown out of the buggy in which they were riding, when the horse became frightened at the defendant's automobile. The defendant's car made a sudden appearance at the crest of the hill on a public road, running at a rapid speed in a cloud of dust, and the horse though accustomed to automobiles, became uncontrollable and the plaintiffs were thrown out of the buggy and the child was killed. *Held,* that it is the duty of the autoist to use the highest degree of care that a very careful person would use under like circumstances to prevent injury or death to persons on or traveling over such public roads.

2. **INSTRUCTIONS: Penal Statute.** Where an instruction includes Sec. 5425, R. S. 1909, which relates to the penal feature of the statute, it is erroneous as applied to a private conveyance.

Appeal from Buchanan Circuit Court.—*Hon. Chas. H. Mayer,* Judge.

REVERSED AND REMANDED.

*O. C. Mosman* and *Vinton Pike* for appellant.

*Thompson & Griswold* for respondents.

JOHNSON, J.—Plaintiffs who are husband and wife sued to recover damages in the sum of ten thousand dollars for the death of their infant child which they allege was caused by the negligence of defendant in the operation of his automobile. The answer is a general denial. The jury returned a verdict for plaintiffs, assessing their damages at $3000 and on the overruling of his motion for a new trial, defendant appealed.

The death of the child, who was five years old, was caused by the fright of a horse attached to a buggy in which she was riding with her parents. The horse was being driven westward on a public road in Buchanan county and became frightened at an automobile coming at high speed from the opposite direction. The horse, though spirited, was accustomed to motor vehicles, but the sudden appearance of the car on the crest of a hill and its rapid approach in a dense cloud of dust, caused the animal first to exhibit keen anxiety and then uncontrollable terror. Finally it whirled around, upset the buggy, kicked itself loose and ran away. The child received injuries from which she died the following day. The car was occupied by defendant, who was driving, and several companions. It is conceded that the fright of the animal was apparent and was observed by defendant when the car was at the top of the hill. Defendant and his companions say the horse was plunging and showing other signs of being uncontrollable at their first view of him and that his fright must have had some other cause, since it began before he could see the automobile. Further they state that defendant immediately stopped his car at a distance, afterward ascertained by measurement, of 335 feet from the place of disaster. On the other hand, the evidence of plaintiff tends to show that the sudden apparition of the car and the enveloping cloud which advanced swiftly with it frightened the horse and that the continued approach of the terrifying spectre at unabated speed caused him to become unmanageable.

For present purposes we must accept the evidence of plaintiffs which not only accuses defendant of negligence but of a most reckless indifference to the rights of the occupants of the buggy whose lives were put in the greatest jeopardy by a cause within his control.

The first point to receive our attention is defendant's criticism of the first instruction given at the request of plaintiff which, it must be confessed, is entirely too long. As observed by counsel for defendant, it was not necessary to incorporate in the instruction the entire legislative code on the subject of the various duties of autoists to others rightfully using the public highways, nor to include conceded facts in the hypothesis on which a verdict for plaintiffs was directed. Such faults have a tendency to obscure the real issues and to divert the thoughts of the jury into erroneous or, at least, unprofitable channels. But in the present instance we do not find the defects noted rise to the dignity of prejudicial error. What we may call the charge in the instruction directed a verdict for plaintiffs only upon the hypothesis that the injury of the child was due to negligence of defendant (first) in driving the car at unreasonably high speed, (second) in failing to keep a vigilant watch, and (third) in failing to stop or check speed after the peril of the occupants of the buggy became apparent.

There was evidence tending to show that the injury was caused by one or more of such acts of negligence. If any one of them was the proximate cause of the injury, defendant would be liable for the resultant damages under the provisions of chapter 83, Revised Statutes 1909, which enjoin upon autoists the duties of running at reasonable speed (sec. 8519), of keeping "a vigilant watch for all vehicles . . . drawn by animals," (sec. 8517) and of stopping and taking reasonable precautions to avoid injuring the occupants of such vehicles on the appearance of danger to them. The term "vigilant watch" includes not only the task of looking ahead for animal-drawn vehicles but while approaching them to keep a sharp lookout for exhibitions by such animals of fright or uneasiness which if disregarded might endanger the lives or safety of human beings.

Roberts v. Trunk.

The statutory duty of the autoist is "to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury or death to persons on or traveling over such public roads." [Sec. 8523.]

We do not believe the jury could have been misled by the unnecessary verbosity of the instruction into a misconception of the legal duties of defendant towards the child, and, as we have shown, there was no inaccuracy or vagueness in the application of the legal rules to the ultimate evidentiary facts which were clearly and succinctly stated.

The instruction on the measure of damages given at the request of plaintiffs in as follows: "The jury are instructed that if you find a verdict for the plaintiffs herein, you will assess their damages at such sum as you may believe from the evidence they have sustained on account of the death of their child, in an amount not less than two thousand dollars nor more than ten thousand dollars, in the discretion of the jury, and in determining the amount, you may take into consideration the amount, if any, that you may find from the evidence plaintiffs have sustained on account of the loss of the earnings of their infant child prior to her reaching the age of eighteen years, less the expense of her support and maintenance during said time, and you may also take into consideration the facts constituting negligence, if any, on the part of the defendant, causing the death."

It will be observed that this instruction embraces the penal features of the remedy afforded by section 5425 of the statutes which provide that in cases where the death of a person is caused by negligence, unskillfulness or criminal intent of the operator of a public conveyance (including automobiles) the owner or operator of such public conveyance "shall forfeit and pay as a penalty, for every such person . . . the sum of not less than two thousand dollars and not ex-

ceeding ten thousand dollars, in the discretion of the jury," etc.

The history and interpretation of this remedial provision which first appeared in an amendment of the statute enacted in 1905, have received exhaustive attention in a number of recent decisions of the Supreme Court and Courts of Appeals. There has been much discussion and difference of opinion over the question of whether the remedy is penal, compensatory or both penal and compensatory, but that question has been definitely settled in the decision of the Supreme Court in Boyd v. Railroad, 249 Mo. 110, where it is held that a recovery under section 5425 is penal up to the sum of $2000, but that the extent to which a plaintiff may recover, if at all, in excess of that sum up to $10,000, is remedial and compensatory and the jury and court where a sum in excess of $2000 is demanded, in exercising the wise and just discretion which the statute authorizes, should consider evidence of the age, condition of health and earning capacity of the deceased, and the consequent loss to the plaintiff, together with the circumstances attending the killing, overruling so far as conflicting, Young v. Railroad, 227 Mo. 307 and Boyd v. Railroad, 236 Mo. 54.]

Section 5425 by its terms applies only to public conveyances and could have no application to the case in hand where the automobile was being used as a private conveyance but for a provision in section 8523 which, referring to private motor vehicles, makes the owner or operator of such vehicle "liable in damages to a person . . . injured by the failure of the owner, operator, or person in control of an automobile, to use such degree of care and in case of the death of the injured party, then damages for such injury or death may be recovered as provided in section 5425," etc.

The absence from this statute of any reference to a penalty similar to that prescribed in section 5425,

led the St. Louis Court of Appeals in the case of Nicholas v. Kelley, 159 Mo. App. 20, to the conclusion that only compensatory damages and not a penalty are recoverable in actions falling within the purview of section 8523. We are impressed with the reasoning supporting the concluson and refer to that decision for a full and complete expression of our own views on the subject. Plaintiffs are entitled only to compensatory damages and in fixing a minimum limit to the recoverable damages and in directing the jury to "take into consideration the facts constituting negligence, if any," the instruction erroneously included the penal features of section 5425, which as we have shown, have no application to an action for negligence in the operation of a private conveyance. The error was prejudicial, since we cannot know whether, or to what extent, the verdict which exceeded the minimum assessment allowed by the instruction is responsive to the punitory direction to take into consideration the facts constituting negligence. We must assume the jury were influenced by that charge and that the damages assessed in their verdict were not entirely compensatory as they should have been. Since the case must be remanded and may be retried we admonish plaintiffs to avoid repeating the faults we have noted in the first instruction.

The judgment is reversed and the cause remanded. All concur.