MINNIE KISER, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY and ROBERT J. DUNHAM and FORD F. HARVEY, Receivers, Appellants.

**Kansas City Court of Appeals, February 15, 1915.**

1. **NEGLIGENCE: Street Railways: Derailment.** The plaintiff, a widow, seeks to recover damages for the death of her husband, who was a conductor on one of the defendant's street cars. The motorman ran the car at an excessive rate of speed around a curve, it jumped the track, went over a bluff and the motorman and conductor were killed. *Held*, that the demurrer to the evidence was properly overruled.

2. ————: **Interstate Commerce.** When a car is being operated by defendants at the time of an accident intrastate and not interstate, the Federal Employers' Liability Act does not apply.

3. **INSTRUCTIONS: Nondirection.** The practice of counsel, in personal injury causes, of failing to ask an instruction setting forth the facts entitling the plaintiff to recover is not reversible error, but mere nondirection.

4. **MISCONDUCT OF COUNSEL: Argument to Injury.** It is proper for counsel to argue to the jury the remedial features of the evidence, where they were not limited to $2000.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*John H. Lucas* and *Chas. N. Sadler* for appellants.

(1) Under the United States statutes if any cause of action exists it is under the United States laws and not under the State courts. U. S. Compiled Statutes (1911 Supp.), sec. 1, pp. 1316, 1317, 1322, 1323; Railroad v. Maerkl, 198 Fed., 1. (2) Plaintiff's husband was guilty of contributory negligence. 29 Cyc. 511; Kelley v. Railroad, 101 Mo. 67; Hogan v. Railroad, 150 Mo. 36; Holverson v. Railroad, 157 Mo. 216; Fumalt v. Railroad, 175 Mo. 288; Doerr v. Brewing Co., 176 Mo. 547; Hamlett v. Railroad, 89 Mo. App. 354. (3) The court erred in admitting evidence on behalf of plaintiff. Hahn v. Cotton, 136 Mo. 216; Smith v. City of Sedalia, 152 Mo. 283; Ingles v. Railroad, 145 Mo. App. 241; Glasgow v. Railroad, 191 Mo. 358-366; Taylor v. Railroad, 185 Mo. 255. (4) The court erred in permitting counsel for plaintiff to make improper remarks in his argument to jury. Kinney v. Railroad, 169 S. W. 23; Stetzler v. Railroad, 109 S. W. 666; McDonald v. Cash, 45 Mo. App. 584; Wendell v. Peoples Housefurnishing Co., 165 Mo. 527. (5) The court erred in refusing to sustain motion for new trial. Northrop v. Diggs, 115 Mo. App. 93; Morris v. Kansas City, 117 Mo. App. 303; Lehnick v. Railroad, 118 Mo. App. 611.

*Langsdale & Howell* for respondent.

(1) Defendants' demurrers were properly overruled. (a) Because the facts do not bring this case within the limits of the Federal Employers' Liability Act. Railroad v. Behrens, Admr., Etc., Sup. Ct. Rep., June 1, 1914, p. 646, and the authorities therein cited; Thornton on "The Federal Employers' Liability & Safety Appliance Act," p. 53. (b) Plaintiff's hus-

band was not guilty of contributory negligence. Moore v. St. Louis Transit Co., 193 Mo. 411, 418. (2) The instruction given by the court on behalf of plaintiff was properly given. Murphy v. Railroad, 228 Mo. 56, 87; Waite v. Railroad, 168 Mo. App. 160; Winfield v. Wabash, 166 S. W. 1037. (3) The court properly overruled instructions asked by defendants. Moore v. St. Louis Transit Co., 193 Mo. 411, 418; Smith v. Sedalia, 154 Mo. 301-2; Benjamin v. Railroad, 245 Mo. 612; Borders v. St. Ry. Co., 168 Mo. App. 176; Williams v. Lamp Co., 173 Mo. 97; McGrath v. St. Louis Transit Co., 197 Mo. 105-6; Cole v. St. Louis Transit Co., 183 Mo. 93. (4) The court properly admitted the evidence on behalf of plaintiff herein objected to by defendants. Meily v. Railroad, 215 Mo. 589; McAnany v. Henrici, 238 Mo. 113. (5) Counsel for plaintiff made no improper remarks in his argument to the jury. Murphy v. Railroad, 228 Mo. 56.

JOHNSON, J.—Plaintiff, the widow of William J. Kiser, deceased sued to recover damages under section 5425, Revised Statutes 1909, for the death of her husband which she alleges was caused by negligence of defendant in the operation of an electric street car on the "Observation Park" line in Kansas City. Kiser met his death by the derailment of the car of which he was conductor and the negligence upon which plaintiff bases her pleaded cause was that of the motorman in attempting to run the car at a high and dangerous rate of speed around a curve in the track. The answer pleads contributory negligence and that plaintiff is without legal capacity to sue, for the reason that the car was being used, and its operators were engaged in interstate commerce at the time of its derailment, and that the cause of action, if any, which arose from the alleged negligence, inured to the personal representative of the deceased and not to his widow. A trial in the circuit court resulted in a verdict for plaintiff in

the sum of $8000, which afterwards was reduced by a voluntary remittitur, to $7500, and judgment was rendered for plaintiff in that sum. Defendants appealed.

The material facts of the case are as follows: The defendants as receivers of the Metropolitan Street Railway Company operate a street railway system covering and connecting the adjacent cities of Kansas City, Missouri, and Kansas City, Kansas. The system consists of a large number of lines, some of which are wholly in Missouri, some wholly in Kansas, and the remainder in both cities. The lines intersect at various places in both cities, so that it is possible by changing cars for a person to travel over the system from any point on any line in one city to any point on any line in the other, for a single fare. A passenger boarding a car intending to transfer to a car on another line at a connecting point may procure a transfer ticket on the payment of his fare to the conductor which entitles him to ride to his destination on the connecting line. The Observation Park line was entirely in Kansas City, Missouri. Its northern terminus was at the old Union Station and its southern at a point two or three miles south, in Missouri, but near the boundary line.

The car in question was going at midnight towards the Union Station and was derailed at a point where the track curves from a westerly course on Fifth street to a southwesterly course on Bluff street. This place is on a high bluff. Fifth street ends at this intersection and immediately beyond the plateau comes to an abrupt end and there is a fall of fifty feet to the level of the bottom lands, the face of the bluff being protected by a stone wall.

There were only three persons on the car, viz., the motorman, conductor, and a passenger going to the Union Station to board a train for Nebraska. As the car approached the curve, the conductor stood in the rear vestibule and the motorman was at his post

in the front vestibule. The speed of the car was from twenty to twenty-five miles per hour, and the motorman ran the car into the curve without checking speed, with the result that the car jumped the track, ran straight westward over the curbing and sidewalk and, breaking through the railing at the edge of the bluff, plunged over the wall and fell to the bottom. The motorman and conductor were killed but the passenger escaped death.

From the testimony of the passenger it appears that the car carried very few passengers on that trip, that the stops it made were brief, and that both motorman and conductor acted hurriedly, as though they were trying to regain lost time. Most of the time the conductor stood in the rear vestibule and when stops were made was prompt in giving the signal to start. But the witness refuted the suggestion in his cross-examination that either motorman or conductor was negligent before reaching the curve at Bluff street. "The car," he said, "came to a full stop each and every time, although they made their stops very short, just long enough for them to get on and off."

As to the speed of the car during the entire trip the witness testified: "Q. How was the speed of that car from the time you left Fifth and Broadway (two or three blocks from the curve) up to the time it went over the bluff? A. Well, after this car started up it gradually gained speed right along, and I think it was gaining speed all the while, perhaps, when it went over."

"Q. Your idea is that he (the motorman) started and just kept gaining speed? A. Well, yes, you might put it that way. I don't think it lost any speed at any time."

"Q. How had it been running before you got down to Fifth and Broadway with reference to whether he had been running fast or not? A. It was running at a good ordinary rate of speed."

From Broadway to Bluff streets, Fifth street practically is level and there is no evidence that the motorman was negligent in running at twenty or twenty-five miles·per hour along that street at midnight, but there is evidence, introduced by plaintiff, tending to show that it was negligent and even reckless to run into a curve of the kind in question at a higher speed than four or five miles per hour and without shutting off the power. Further it appears that the speed could have been reduced from twenty-five to five miles per hour in a distance of about seventy-five feet. ᠂ The position of defendants on the issue of contributory negligence is that under the rules in force, the conductor was in control of the car and being in a position to have it stopped by the motorman on his signal, was himself negligent in not giving such signal when he knew, or should have known, that the motorman was not reducing speed for the curve. The evidence on this issue in its aspect most favorable to the cause of action tends to show that while the motorman was bound by the rules to stop the car on the signal of the conductor and not to start without a signal, the primary duty was on him to regulate the speed and to run the car on schedule time. The conductor could have had the car stopped at any place by giving the emergency signal but it is reasonable to infer that such signal was not intended to be given except in emergencies and not as a means merely for regulating the speed to suit the wishes of the conductor.

It is our opinion that the evidence would not justify us in holding that the conductor was guilty in law of contributory negligence. The negligence of the motorman is clearly shown, but it did not begin until the car reached a point seventy-five feet from the curve and consisted of his failure to begin reducing speed for the curve. The car had not been negligently handled up to that point and no occasion had arisen for the conductor to warn the motorman that he was run-

ning at too high speed. Certainly he had no reason to resort to the drastic remedy of an emergency signal before the appearance of negligence on the part of the motorman. The position of defendant would appear to be reduced to the idea that the conductor should have anticipated that the motorman would abandon reasonable care which he had been observing, would not slow down for the curve at the proper place, and that the conductor should have been alert to discover such negligence and diligent in giving the emergency signal on the instant an emergency was created.

In the view that the car, while on the straight and level course of Fifth street was not run at excessive speed under the circumstances, the conductor, who was properly at his place in the rear vestibule, was not in a position to know exactly where the reduction of speed should begin and while it was his duty to be observant as far as his other duties and his opportunity would permit, and to signal for a stop as soon as he discovered the necessity therefor, he was justified in believing that the motorman would not be reckless or negligent, and unless the evidence shows beyond reasonable question that an ordinary careful and prudent person in his situation would have discovered the danger in time to have avoided it by giving a signal to stop, the conductor should not be pronounced guilty in law of contributory negligence.

The evidence contains no such proof. Not over three seconds elapsed while the car traversed the distance in which speed should have been lessened. It is doubtful, to say the least, if a saving signal could have been given and it would be most unreasonable and arbitrary to declare that the conductor should have discovered the danger and given the signal at the very instant the danger arose. Speaking of a somewhat similar case the Supreme Court say in Moore v. Transit Co., 193 Mo. l. c. 418:

"If the car was run into the curve at a rate of speed that was, under the circumstances, negligent, it was not the fault of plaintiff, the conductor, because although under the rules of the company he had general charge of the car, yet it was not in the nature of his duties to direct the speed of the car at every point. His duties were to be elsewhere than on the front platform and otherwise than observing the track and noting when to slow down and when to increase speed. Those duties in their detail naturally belonged to the motorman and by the rules of the company read in evidence were expressly excepted from the duties of the conductor. It may be that the conductor would have authority, when a condition arose that required it, to order the motorman to slow or speed the car, but such authority would not imply that he was expected to direct the speed of the car at every point or when there was nothing especial arising to call for an interposition of his authority. The negligence of the motorman, therefore, if there was such negligence, was not the negligence of the conductor. The court did not err in refusing the instruction looking to a nonsuit."

The evidence does not warrant the conclusion as one of law that the conductor was guilty of contributory negligence.

The point raised in the answer that the cause of action falls within the scope of the Federal Employers' Liability Act of April 22, 1908, and therefore, that plaintiff, as the widow of the deceased, is without legal capacity to sue, must be ruled against the defendants. The car was being operated only in this State, was carrying no interstate passengers and, at the time, was not being used as an instrumentality of interstate commerce in any manner. If it be conceded, for argument, that it would have been employed in such commerce if it had been carrying passengers to whom the conductor had issued transfers which entitled their holders to transfer if they chose, to cars running into Kansas,

still it could not be said that the mere possibility or even probability of such use would stamp the car with the character of an instrumentality of interstate commerce, whether or not it was being actually employed in such business. To meet the fatal objections to the first Employers' Liability Act which were sustained by the Supreme Court of the United States in the first "Employers' Liability Cases," 207 U. S. 463, the second Act carefully limited its scope to cases where both the employer and the employee are engaged at the time of the injury in interstate commerce—"not generally but in that specific instance, and in that identical commerce, he (the employee) must be injured if he recover under the statute." [Thornton on The Federal Employers' Liability & Safety Appliance Act, p. 53.]

The most recent decision of the Supreme Court bearing on the question under consideration is Railroad v. Behrens, 233 U. S. 473, where it is held: "An employee of a carrier in interstate commerce by railroad who is engaged on a switch engine in moving several cars all loaded with intrastate freight from one point in a city to another point in the same city is not engaged in interstate commerce and an injury then sustained in not within the Employers' Liability Act of 1908."

The rule of that decision is applicable to the instant case and its application compels the conclusion that in the operation of the car both defendants and the conductor at the time of the injury were engaged in intrastate and not interstate commerce.

The demurrer to the evidence was properly overruled.

The only instruction asked by plaintiff dealt with the subject of the amount of recovery "if you find the issues for the plaintiff."

188MA12

The practice of counsel for plaintiffs in personal injury causes of failing to ask an instruction setting forth the facts entitling the plaintiff to recover has been adversely commented upon by the Supreme Court in Eversole v. Railroad, 249 Mo. 523, but the decision did not go so far as to hold that such practice would constitute reversible error, nor to overrule prior decisions of that court in which the failure of the plaintiff to ask an instruction on the issue of negligence is classed as mere nondirection. [Murphy v. Railroad, 228 Mo. 56, and cases cited; Waite v. Railroad, 168 Mo. App. 1. c. 160; Wingfield v. Wabash, 257 Mo. 347.]

Until the Supreme Court definitely disapprove such application of the doctrine of nondirection and hold that it is reversible error for a plaintiff to submit his case to the jury without defining his cause as it is defined in his petition, we must follow the rule which tolerates such practice by allowing it to go unpunished.

Further defendants complain of the refusal of the court to give a number of instructions they offered. Some of these instructions if given would have submitted to the jury an issue of whether or not the deceased was engaged in interstate commerce at the time of his death. There was no controversy in the evidence over the facts relating to that issue and as we have shown the facts were such as to compel the conclusion as one of law, that the deceased was engaged in intrastate commerce. In a series of instructions defendants endeavored to submit to the jury the issue of contributory negligence. The burden of proving such negligence was upon the defendants and a careful analysis of the evidence convinces us that an inference of negligence on the part of the conductor necessarily would be based upon mere speculation about what he might have done to save his life under hypothetical but unproved conditions. The jury should not have been allowed to find that he was negli-

gent in failing to give the emergency signal in the absence of a reasonable evidentiary foundation for such conclusion. The elemental facts necessary to support it were that the negligence of the motorman and its consequent imminent peril to the occupants of the car became apparent or should have become apparent to the conductor in time for him to have avoided the danger by giving the emergency signal. The disclosed facts and circumstances do not even tend to establish any of such constitutive facts and the conclusions of constributory negligence could be reached only at the end of the process of building inference upon inference and conjecture upon conjecture. The court did not err in refusing these instructions. The evidence must present a debatable issue, else there is nothing to refer to the triers of fact.

We have carefully considered objections offered by defendant to rulings on the admission of evidence and find they are not well taken. Specific criticisms of the argument of counsel for plaintiff to the jury and the point of an excessive verdict may be answered together by pointing to recent decisions which hold that section 5425, Revised Statutes 1909, "is penal so far as it fixes the amount of recovery at not less than $2000, but is remedial and compensatory as to any recovery in excess of that amount," and that "where a plaintiff, as in this case, seeks to recover under said section a larger sum than $2000, the jury or court in preparing itself to exercise a wise and just discretion should receive (and, of course, take into account) evidence of the age, condition of health, and earning capacity of the party killed, and the consequent loss to the plaintiff thereby, together with the facts and circumstances attending the killing for which damages are sought to be recovered." [Johnson v. Railroad, 174 Mo. App. 16; Boyd v. Railroad, 249 Mo. 110; Eversole v. Railway, 249 Mo. 529; Lasater v. Railroad, 177 Mo. App. 535.]

Kiser v. Railway Co.

It was proper for counsel to argue to the jury remedial features of the evidence and since the jury were not limited to $2000 as a penal assessment and there is abundant evidence to justify an assessment of compensatory damages, we do not perceive any ground upon which it may be said that the verdict was excessive in law.

There is no prejudicial error in the record and the judgment is affirmed.    All concur.