HARRY P. BALDWIN and NELLIE F. BALDWIN, Respondents, v. FORD J. HARVEY and R. J. DUNHAM, Receivers of the METROPOLITAN STREET RAILWAY COMPANY, Appellants.

### Kansas City Court of Appeals, June 14, 1915.

1. **NEGLIGENCE: Street Railways: Death.** The plaintiffs sued the defendants for the negligent death of their child. The plaintiffs claimed that the child, nineteen months old, went in front of a standing street car, and the servants of defendants negligently ran over the child. *Held*, that the plaintiffs were entitled to recover.

2. **INSTRUCTIONS: Measure of Damages.** An instruction, which told the jury that in the event they found for plaintiffs they would assess their damages in a sum not less than two thousand and not more than ten thousand in the discretion of the jury taking into consideration all the facts and circumstances in evidence in the case, is not erroneous. And the omission of explanatory features was mere nondirection and not misdirection and is not reversible error, especially when the records clearly show that the appellants were in no way prejudiced thereby.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

AFFIRMED.

*John H. Lucas* for appellants.

*Atwood & Hill* for respondents.

TRIMBLE, J.—Respondents brought suit for the death of their little son, Harry P. Baldwin, Jr., nineteen months of age, who was run over and killed by one of the cars belonging to the Metropolitan Street Railway Company and being operated by its Receivers.

The charge in the petition is that, while the car was standing still, the child got on the track a few feet in front of it, and in plain view of those in charge of the car, and that while the child was thus on the track the car was negligently started and caused to run over and kill it.

The evidence in plaintiffs' behalf as to the manner of the child's death consisted of the testimony of the child's grandfather, the child's grandmother, and a neighbor lady who was sitting on her porch near by. Their testimony is to the effect that the car had stopped to discharge passengers; that, while it was standing still, the baby got on the track a few feet in front of the car and then the car started up and struck him with the fender and knocked him down and run over him and stopped just as the rear wheels reached his leg.

The appellants contended that the child did not get in front of the car but toddled on to the track at the side of the car as it passed and that only the rear wheels struck the child. They introduced evidence of several witnesses in support of this contention. Davis, on his porch two hundred and fifty feet away,

says the child was out in the street about three feet from the curb and south of the track when the car started and the child went north to the tracks but passed out of his vision before it was struck. Daley, who was waiting for a car a block west, says no child was in front of the car when it started. Cordier, in an automobile about fifty feet behind the car, saw the child on the south track going diagonally northeast as the car started, but it passed out of his vision before it was killed. Three passengers on the car testified they saw the child near the south side of the track about even with or a little in front of the car after it started and, though they did not see the child struck, they felt a little jar of the rear trucks. There were two children out in the street at the time and there is room for the claim that some of these witnesses saw the other child that was not hurt and confused it with the one that was killed. The grandfather was running toward the child and looking directly at it when it got on the track as were also its grandmother and the neighbor lady Mrs. Hamilton. They were the only eyewitnesses to the striking of the child. The motorman says no child was on the track at the time he started the car. However, a passenger, who got off the car with his wife and baby, says that when the car started up, the motorman was not looking in front of him but at the witness' wife who was out to one side, she having just alighted from the front end of the car. The conductor testified he examined the car at the barn and found no blood on the front wheels but did find it on the rear wheels.

In this state of the testimony, of course, the question of whether the child was in front of the car when it was standing still and was killed by the car being started up without the motorman looking, or whether the child ran into the car from the side and was killed, was for the jury to determine. It returned a verdict for $2500.

Appellants insist that the case should be treated in this court as one brought under sections 5426 and 5427 instead of 5425, Revised Statutes 1909. We think it is manifest, however, that both parties treated this case in the trial as one under section 5425. This is shown by an instruction asked by respondent and also by an instruction asked by appellant. In Harding v. Missouri Pacific Railway Co., 248 Mo. 663, l. c. 670, the Supreme Court held that, if the case had been brought under sections 5426-7, error, in giving in plaintiff's behalf an instruction good only under section 5425, was invited by defendant asking an instruction, which was refused, that was applicable only to 5425. So that if plaintiff's instruction is erroneous merely because it is applicable to 5425 instead of to 5426, then that error cannot be taken advantage of since it was invited by appellants. But the requesting of these instructions by both sides of the case show that they considered and tried the case as one under section 5425. And there is nothing in the pleadings or evidence to contradict that view.

But granting that the case is under section 5425, the question then arises, is respondent's instruction on the measure of damages erroneous when applied to that section? It told the jury that in the event they found for plaintiff they would assess the damages in a sum not less than two thousand and not more than ten thousand dollars, in the discretion of the jury, "taking into consideration all the facts and circumstances in evidence in the case." There is no doubt but that the instruction is good as far as it went. But should it have gone further and told the jury that in determining the amount they would allow they could take into consideration the pecuniary loss to the parents of the value of the child's life during minority and the expense of burial, less the reasonable cost of keeping and rearing the child during minority, and that the jury could not allow anything by way of *solatium* to the parents'

feelings or for benefits accruing to them after the child reached maturity? As to the compensatory features of the recovery, doubtless it would have been well for the instruction to have contained these directions. The instruction would thereby have been more explicit. But since the instruction was good as far as it went, it would seem that the omission of these explanatory features was mere *non*-direction and not *mis*-direction. And if appellants had desired more explicit direction and limitations upon the amount which the jury would allow as *compensation,* they could easily have asked an instruction embodying these features. They did not do this but chose to ask an instruction forbidding any recovery beyond the *purely penal* features of the statute, namely $2000. In the case, above cited, of Harding v. Missouri Pacific R. Co., 248 Mo. 663, the instruction for plaintiff told the jury they could "return a verdict in favor of the plaintiff for not less than two thousand dollars, nor more than ten thousand dollars, in the discretion of the jury," and the court on page 670, in speaking of this instruction, said "the measure of damages specified in that section (5425) was properly stated in the instruction."

But, however this may be, we do not think the case should be remanded for another trial for the reason that, even if the instruction is not as explicit as should have been, the record clearly shows that the appellants were in no way prejudiced thereby. The verdict was for $2500. Of this amount $2000 is allowed by the statute on the *purely penal* basis. This left only $500 to be regarded as *compensatory* damages. The evidence was that it cost the parents $90 to bury the child. This left only $410 for the pecuniary loss to the parents of the child's services during his minority. The evidence was that he was a well-developed, healthy child. It would seem that $410 would be a very conservative sum to allow the parents for the net value of the services of the child until he became twenty-one

years old. This fact shows clearly that the jury did not allow anything by way of *solatium* to the parents' feelings, nor for anything beyond the net value of the services during minority, and hence, the jury were not misled to appellants' injury by the failure of respondent's instruction to more clearly specify and limit the elements of recovery. This is the case even on the theory that nothing above the $2000 is allowable by way of penalty. It leaves out of view entirely any sum allowed as penalty above the $2000, if the statute has penal features above that sum, owing to the nature and character of the acts causing the injury. If the statute means that the jury may, on this account, award, *as penalty,* a sum above $2000, then the above analysis of the verdict takes no account of that, and the absence of prejudice to the appellants on account of the instruction is made still more apparent. For, if the motorman did start the car while looking at something else instead of ahead of him as he should have done when driving a dangerous agency over a traveled street in a populous community, he was guilty of such gross negligence as to warrant a jury in placing the *penalty above $2000 if the statute, when properly construed, allows that*. But, as we have seen, the verdict can be said to clearly rest solely on compensatory features above the $2000, and takes no notice of any penal features over that amount even if that were allowable. We cannot see, therefore, wherein appellants can claim they were harmed by the instructions. Section 2082, Revised Statutes 1909, forbids the reversal of the judgment of any court unless error was committed materially affecting the merits. Under all the circumstances we think the mere failure of the instruction to specify the elements the jury could consider in exercising their discretion did not constitute reversible error.

We do not agree with the view that there was no evidence upon which the jury could base a finding of

*compensatory* damages. The burial expenses were in evidence and so also was the age, sex and health of the child. In cases like this, the net value of the child's services during minority are not susceptible of exact proof, but the law, as well as the express direction of the statute, leaves it to the good sense, observation and experience of the jury guided by the facts and circumstances. What the services of the child would be, if it had lived, no one can tell. But the law allows the jury to presume that the child will be dutiful and obedient, and from that to figure what the services *ought* to be worth. [Brunke v. Missouri and Kansas Telephone Co., 112 Mo. App. 623, l. c. 628; Nagel v. Missouri Pacific R. Co., 75 Mo. 653, l. c. 665; Stotler v. Chicago and Alton Ry. Co., 200 Mo. 107, l. c. 142.]

The instruction asked by appellants was, therefore, properly refused since it did not permit a recovery beyond the $2000. In other words, it did not allow any recovery for compensatory features.

Believing that no reversible error appears in the record, the judgment is affirmed. All concur.